STATE, EX REL. ROSS E. HALL, RELATOR, v. EARL CLINE ET AL., RESPONDENTS.

FILED MARCH 8, 1929. No. 26901.

*Swarr, May & Royce,* for relator.

*John J. Ledwith* and *Henry H. Foster,* for respondents.

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON, EBERLY and DAY, JJ., and BLACKLEDGE and REDICK, District Judges.

BLACKLEDGE, District Judge.

In this, an original action in this court, the relator seeks the granting of a peremptory writ of mandamus against the respondents, who constitute the board of regents of the university of Nebraska, requiring them to take over the management and control of two state institutions, the school for the deaf at Omaha and the school for the blind at Nebraska City, which management and control is, and has heretofore been, vested in the board of control of the state.

Relator grounds his action upon the proposition that there was adopted by the legislature of 1927, and approved, a joint and concurrent resolution (Laws 1927, ch. 48) to amend section 19, art. IV, of the Constitution. The essential feature of the proposed amendment purports to exclude said schools for the deaf and blind from the jurisdiction of the board of control and to transfer such jurisdiction to the board of regents of the university. Relator alleges that said proposed amendment was duly sub-

mitted to the electors at the general election of 1928, that it received more than a constitutional majority of the votes cast, and became a part of the fundamental law; yet the respondents fail and refuse to take over the management and control of said institutions pursuant to the terms thereof.

The respondents answer, alleging that the proposed amendment was not legally submitted or adopted, for that no notice thereof conforming to the provisions of section 1, art. XVI, of the Constitution, was given nor was there in the actual giving or publication of notice a substantial compliance therewith, whereby the proposed amendment, although having received a constitutional majority of the votes cast, failed of adoption.

Counsel for the respective parties have, by their pleadings and a stipulation of facts, so presented and narrowed the issues for determination by the court that the one question submitted as determinative of the case is, as stated by one side: Is the amendment a nullity because the proposed amendment was not published literally as provided by section 1, art. XVI, of the Constitution? and, by the other, whether unofficial publications not conforming to the provisions of said section can satisfy the requirements thereof?

There is no controversy as to what was actually done. The secretary of state in May, 1928, applied to the attorney general with reference to the manner of submission of the proposed amendment and was advised by that office that publication should be made in conformity with section 2285, Comp. St. 1922, and chapter 113, Laws 1925, amendatory thereof. This provision is, in substance, that not later than the first Monday of the third month next before the election, the proposed amendment shall be published in all newspapers in the state, and that the secretary of state may delegate the duty of transmittal of the notices to the Nebraska press association. Such delegation was made and the notices transmitted, not by the time

so fixed, but about the middle of August, and publication made between that date and September 1 in 422 papers.

It is this publication, together with certain publicity by means of the usual election notices, newspaper editorials and items, handbills, circulars and addresses from civic societies and private sources, which, coupled with the fact that a large number of electors voted on the proposition and it received a substantial majority, the relator contends should satisfy the legal requirements of the situation.

Upon the other hand, it is to be considered that the Constitution itself (article XVI, sec. 1) provides for the proposal of amendments by the legislature as this one was proposed, and that such proposed amendments shall be "published once each week for four weeks, in at least one newspaper in each county, where a newspaper is published, immediately preceding the next election."

In addition thereto, and evidently enacted for the purpose of supplementing and carrying into effect the constitutional provision, chapter 112, Laws 1925, amends the previously existing sections 3086, 3087, 3088, and 3090, Comp. St. 1922, authorizes amendments to be proposed by joint resolution in the legislature, provides for the giving of the notice designated by such constitutional provision in substantially the same terms, and, in addition, provides that the newspapers in which the publication is to be so made shall be designated by the governor.

It is further to be observed that this constitutional provision and chapter 112, Laws 1925, specify amendments to the Constitution proposed by joint resolution of the legislature, while section 2285, Comp. St. 1922, and chapter 113, Laws 1925, to which the secretary of state was referred, are found in, and by their titles and terms relate to, laws and amendments to be considered and submitted under the statutory provisions governing the method of "Initiative and Referendum" and covered by sections 2276 to 2290, inclusive, Comp. St. 1922.

It is elemental that legislation which clearly contravenes the express terms of the Constitution is not valid. It seems perfectly obvious that the provisions of section 2285, Comp. St. 1922, and chapter 113, Laws 1925, undertaken to be followed in the matter of notice in this instance, by reason of the essential conflict of the terms thereof with those of the Constitution itself, cannot be held to have, or to be intended to have, reference to the submission of proposed amendments originating as this one did.

The question then is resolved into the inquiry whether the acts done and notice given can, by any reasonable construction or interpretation, be held to be a substantial compliance with the constitutional requirements. We are reminded in argument that it will not do to require a too rigid adherence to mere details of procedure, that the large vote cast on the proposition demonstrates the actuality of notice to the electors, and that the people should not be hindered in receiving the benefits of an amendment which they have approved by a substantial majority.

To this, it seems to the writer hereof, there are several sufficient answers. The urgency for the amendment is not so great that we need to run counter to the provisions of our fundamental law in order to accomplish it. The institutions are in good hands, the same as control all other charitable institutions of the state. They will not suffer to remain there until the people decide, in a lawful way and upon lawful notice, that they wish a change. The same authority urged upon us in this regard, the people, have already prescribed in their fundamental law how a change thereof may be accomplished. That mandate is of as high an order and as binding upon both the government and the governed as any other that can come from the same source. It is poor argument to say that, rather than rectify an oversight, we must violate existing provisions of our Constitution in order to engraft upon it a new provision which has not received the notice the people have prescribed as necessary to an adoption thereof.

We should consider the seriousness of the business in

which we are engaged. A legislative act may be amended or repealed at any succeeding session of the legislature. A constitutional provision is intended to be a much more fixed and permanent thing.

Indeed, while counsel on both sides of the case seem to concede that the question, by reason of former decisions of this court, in this state is not whether the constitutional provisions under consideration have been *literally* complied with, but whether they have been *substantially* complied with, it is the rule in most other states that there must be an exact and literal compliance with such requirements.

In 12 C. J. 740, sec. 145, the prevailing American rule is said to be: "It is an established general rule that constitutional provisions are to be construed as mandatory unless, by express provision or necessary implication, a different intention is manifest."

Cooley, the very eminent jurist and author, in his treatise on Constitutional Limitations says that the courts tread upon dangerous ground when they venture to apply statutory rules of construction as between what may be "directory" and what may be "mandatory" to the provisions of a Constitution. He says it is the province of an instrument of this solemn and permanent character to establish those fundamental maxims and fix those unvarying rules by which all departments of the government must at all times shape their conduct.

"And it also seems to us that there are few evils which can be inflicted by a strict adherence to the law, so great as that which is done by the habitual disregard, by any department of the government, of a plain requirement of that instrument from which it derives its authority, and which ought, therefore, to be scrupulously observed and obeyed." 1 Cooley, Constitutional Limitations (8th ed.) p. 312.

Counsel for both relator and respondent herein cite us to the case in this court of *State v. Winnett*, 78 Neb. 379. That case, in which the opinion was written by the late

Justice Sedgwick, has been considered and approved by many other courts as embodying the rule of reason whereby a too rigid adherence to nonessential provisions is done away and the sufficiency of an act is made to rest upon a substantial. compliance with existing provisions. We are content to follow the rule expressed in that case and have adopted it as the first paragraph of the syllabus in this case. It states that the will of the people should not be defeated on account of a slight and unimportant failure to comply with the constitutional limitations, and that, where there was a substantial compliance with the provisions as to published notice, the fact that the publication was made for one week less than the required time in one county of the state will not invalidate the amendment.

In the instant case, we find a far different situation. Here there was no attempt to follow. the governing constitutional or statutory provisions as to publication of notice. There was not merely a failure to publish for one. week in one county, there was no publication for any of the four weeks in any county during the required time. There was no publication during the specified week under the inapplicable statutory provision that was undertaken to be followed. There was no designation by the governor of any paper for the publication. There was no official publicity given to the matter during the four weeks immediately preceding the election. No one can say what the result upon the vote or upon the information and wishes of the people would have been had this been done by consecutive publications when the election was imminent, as the Constitution provided. A single publication in any number of papers more than two months prior to the election cannot suffice as a substantial compliance with the requirements. The people have a right to have the proper submission of any amendment they desire. They have both the right and the duty to see that it is lawfully done, and it is the duty of the court to look respectively to the preservation of the right and performance of the duty.

It is the unanimous opinion of the members of the court who heard the case that, in the submission of the proposed amendment, there was not a substantial compliance with the constitutional requirements, and that the amendment was not adopted.

Upon consideration of the case, we find so serious a defect in the joint resolution itself (Laws 1927, ch. 48) as to make at least doubtful the validity of the amendment, even if regularly published and adopted.

Section 19, art. IV, of the Constitution, provides: "The board of control shall have full power to manage, control and govern, subject only to such limitations as may be established by law" [all state, charitable, reformatory and penal institutions that now are or may hereafter be established], (except the Nebraska school for the deaf and the Nebraska school for the blind, which shall be under the jurisdiction of the board of regents of the university of Nebraska.)

The amendment proposed by the joint resolution omits all the foregoing which is inclosed in brackets and adds all that inclosed in parentheses. It would remove all jurisdiction from the board of control of every sort of institution, and place it nowhere else except as to the two institutions committed to the board of regents. It is certain that such a proposition was neither intended by the legislature nor submitted to the people.

This situation was not presented to us in the briefs or argument of the case and we have disposed of it upon the propositions submitted.

WRIT DENIED.