SCOTT G. STEWART, APPELLANT, V. ADVANCED GAMING TECHNOLOGIES, INC., ET AL., APPELLEES.

723 N.W.2d 65

Filed October 27, 2006.   No. S-06-966.

Stephen D. Mossman, J.L. Spray, and Robin L. Spady, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellant.

James A. Overcash, Krista L. Kester, and Allen M. Tate, of Woods & Aitken, L.L.P., for appellee John A. Gale.

Norman M. Krivosha, Jeremy Fitzpatrick, and Matthew M. Enenbach, of Kutak Rock, L.L.P., for appellees Advanced Gaming Technologies, Inc., et al.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ., and HANNON, Judge, Retired.

PER CURIAM.

## NATURE OF CASE

Nebraska Secretary of State John A. Gale determined that an initiative measure known as the Video Keno Initiative and sponsored by Advanced Gaming Technologies, Inc.; Hastings Keno, Inc.; Big Red Lottery Services Ltd., by Big Red Lottery Services Inc. as managing general partner; and Papillion Keno, Inc. (collectively the Sponsors) should be placed on the ballot for the November 7, 2006, general election. Scott G. Stewart, appellant, brought this action against the Sponsors and Gale in the district court for Lancaster County pursuant to Neb. Rev. Stat. § 32-1412 (Reissue 2004). In his amended complaint, Stewart sought an injunction preventing Gale from placing the Video Keno Initiative on the ballot at the 2006 general election. Stewart also sought a declaratory judgment that the Video Keno Initiative violated the resubmission clause in article III, § 2, of the Nebraska Constitution, because it submitted to the people the essential substance of previous initiatives more often than once in 3 years. Stewart further sought a declaratory judgment that the Video Keno Initiative was legally insufficient and violated provisions concerning games of chance and lotteries in article III, § 24, because it sought by statutory amendment to effect change that was required to be made by constitutional amendment. The Sponsors moved to dismiss. The district court determined that the issue with regard to article III, § 24, was not ripe for determination. Gale and the Sponsors moved for summary judgment. The district court determined that the Video Keno Initiative did not violate the resubmission clause in article III, § 2. The court entered orders which granted the motions, denied relief to Stewart, and dismissed Stewart's action, thereby permitting the

Video Keno Initiative to remain on the ballot. Stewart appealed. We expedited Stewart's appeal. We affirm.

STATEMENT OF FACTS

On February 1, 2006, the Sponsors submitted to Gale a sworn statement of petition sponsors stating that they planned to sponsor an "initiative petition to authorize video keno." On February 21, the Sponsors filed with Gale the final text of the Video Keno Initiative. The Video Keno Initiative proposes to amend certain sections of the Nebraska County and City Lottery Act, Neb. Rev. Stat. §§ 9-601 to 9-653 (Reissue 1997 & Cum. Supp. 2004), to authorize the use of video keno in any county, city, or village lottery. In particular, the Video Keno Initiative proposes to add language to § 9-607(1)(c) which would allow lottery winners to be determined by the following method:

> By use of a game known as video keno in which each player selects or quick-picks numbers from a total of eighty numbers displayed on a video player station and a computer or other electronic selection device randomly selects numbers from the same pool of eighty numbers and the winning plays are determined by the correct matching of the numbers selected by the player with the numbers randomly selected by the computer or other electronic selection device and displayed on the video player station.

(Emphasis omitted.)

The Video Keno Initiative also proposes to add language to § 9-607(1)(d) which would allow in part that "[a]mounts won are shown as credits on a video player station and may be either (A) replayed or (B) printed on a paper ticket which may be redeemed for cash or replayed." (Emphasis omitted.) In addition, the Video Keno Initiative proposes to add sections to the act relating to the distribution of video keno proceeds, including the following language to be added to § 9-650:

> If a video keno lottery is operated by a lottery operator pursuant to subdivision (1)(c)(iii) of section 9-607, the county, city, or village shall require the lottery operator to remit thirty-six percent of the gross gaming revenue on a monthly basis to the county, city, or village in lieu of any other local gaming or amusement tax or contractually agreed amount which might otherwise apply to the video keno lottery, and

the lottery operator shall retain the remainder of the gross gaming revenue. Out of that remainder, the lottery operator shall deduct and retain fourteen percent of the gross gaming revenue as a service fee for video keno lottery conducted at a sales outlet location, and any remaining amount shall be divided equally between the lottery operator and the sales outlet location. The sales outlet location shall be responsible for depositing cash from the video player station to a separate account established by the lottery operator and shall be responsible for the cost of any required bond or other security.

(Emphasis omitted.)

The Video Keno Initiative further proposes to amend § 9-648 to impose on any county, city, or village conducting a video keno lottery a tax of 9 percent of the gross gaming revenue. The Video Keno Initiative proposes to define "[g]ross gaming revenue" as "gross proceeds minus (1) prizes, (2) any prize reserves established by the county, city, village, or lottery operator, and (3) any federal tax imposed on the video keno lottery." (Emphasis omitted.)

On July 7, 2006, the Sponsors submitted to Gale what they contended were sufficient valid signatures from registered voters, sufficiently distributed by county, to qualify the Video Keno Initiative for consideration by the people at the November 7 general election. On July 12, Gale issued a memorandum in which he set forth, among other things, his conclusion that the Video Keno Initiative did not violate the resubmission clause found in article III, § 2. Gale also noted a "potential constitutional impediment" to the Video Keno Initiative raised in an opinion issued by the Attorney General. Gale stated as follows:

The issue is this: whether the Video Keno initiative can be placed on the ballot because it proposes enactment of a "statute" to allow a form of gambling not permitted by the Nebraska Constitution. If legislative proposals to authorize "electronic" or "video" keno are unconstitutional because such gambling is not a permissible form of "lottery" for community betterment purposes, then is this statutory initiative measure equally an impermissible "game of chance" prohibited by Article III, section 24, of the Nebraska Constitution?

Gale stated that he had "limited authority to interpret the validity or construction of any proposed law," and he declined to address the issue. Gale further noted that there was a question whether the issue was ripe for review until after the election.

On August 3, 2006, Stewart, a Nebraska resident, taxpayer, and registered voter of Lincoln, Lancaster County, Nebraska, filed a complaint in the district court for Lancaster County, naming the Sponsors and Gale as defendants. Stewart filed an amended complaint on August 9. Stewart asserted that his complaint was filed pursuant to Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 1995 & Cum. Supp. 2004) (Uniform Declaratory Judgments Act), §§ 25-1062 to 25-1080 (Reissue 1995 & Cum. Supp. 2004) (regarding injunctions), and various provisions found in §§ 32-1401 to 32-1417 (Reissue 2004), including but not limited to § 32-1412 (regarding authority of district court for Lancaster County to review decision of Secretary of State to place initiative on ballot). Stewart sought a temporary and permanent injunction preventing Gale from placing the Video Keno Initiative on the November 7 general election ballot. Stewart also sought declaratory judgments that (1) the Video Keno Initiative violated the resubmission clause of article III, § 2, and (2) the Video Keno Initiative was legally insufficient because it "seeks to enact a Statutory Initiative to provide for gambling which would require the passage of a Constitutional Amendment."

Stewart asserted what he labeled as three theories of recovery. In his "First Theory of Recovery," Stewart alleged that the Video Keno Initiative was legally insufficient because it violated the resubmission clause. He asserted that the Video Keno Initiative was the same measure, in essential substance, as Initiatives 417, 419, and 420 which were submitted to Nebraska voters on November 2, 2004. We recently noted that of these three initiatives, only Initiative 419 was approved by the voters, and we described the three initiatives as follows:

> Initiative 417 proposed to amend article III, § 24, of the Nebraska Constitution, which generally prohibits the Legislature from authorizing games of chance which are not specifically permitted in the constitution, by adding the following language: "(5) This section shall not apply to laws

enacted by the people by initiative measures by which the people may, contemporaneously with the adoption of this subsection or at any time thereafter, provide for the authorization, operation, regulation, and taxation of all forms of games of chance." Initiative 419 dealt with taxation of games of chance conducted at casinos and other locations. Initiative 420 proposed a statute to (1) authorize all games of chance at casinos in metropolitan class cities within 2 miles of the Nebraska border; (2) authorize the use of electronic, mechanical, or other gaming devices at "strategic premises" where at least 250 such devices were operated, as well as at racetracks; and (3) authorize the use of "[l]imited gaming devices" at casinos, "strategic premises," racetracks, and establishments selling alcoholic liquor for consumption on the premises. Initiative 420 also sought to establish the numbers of such casinos and gaming devices to be operated at various locations and to create a commission to regulate gaming. Initiatives 417 and 420 were defeated by the voters at the 2004 election, but Initiative 419 was approved. See Nebraska Blue Book 2004-05 at 1020-23. See, also, Neb. Rev. Stat. §§ 9-901 to 9-904 (Supp. 2005).

*State ex rel. Lemon v. Gale, ante* p. 295, 298-99, 721 N.W.2d 347, 352 (2006).

In his "Second Theory of Recovery," Stewart asserted that the Video Keno Initiative was legally insufficient in that the changes proposed by the Video Keno Initiative could not be achieved by statutory amendment and would require an amendment to the Nebraska Constitution because the proposed changes would violate article III, § 24(1), which provides:

> Except as provided in this section, the Legislature shall not authorize any game of chance or any lottery or gift enterprise when the consideration for a chance to participate involves the payment of money for the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time.

Finally, in his "Third Theory of Recovery," Stewart asserted that the "Ballot Title and Explanatory Statement" for the Video Keno Initiative was insufficient in that it failed to explain to voters that the proposed statutory amendments would require a

constitutional amendment in order to allow video keno games. Stewart subsequently moved to dismiss his third theory of recovery, and such theory is not at issue in this appeal.

The Sponsors moved to dismiss Stewart's claims. The district court, on August 29, 2006, entered an order which denied the motion to dismiss Stewart's first theory of recovery (regarding resubmission) but granted the motion to dismiss the second theory of recovery (regarding article III, § 24). With respect to the second theory of recovery, the court determined that Stewart was requesting the court to determine the substantive constitutionality of the Video Keno Initiative under article III, § 24. The court concluded that because the initiative was only a proposed statute, the "controversy is not ripe for determination and this court is without jurisdiction to enter a judgment." The article III, § 24, theory of recovery was dismissed.

The Sponsors and Gale moved for summary judgment on the first theory of recovery (regarding resubmission). On August 31, 2006, the court entered an order which granted summary judgment in favor of the Sponsors and Gale. The court noted that "[k]eno had been made legal earlier, but it was in the form of pen and paper only." The court determined that the only change proposed pursuant to the Video Keno Initiative was to "permit electronic keno in addition to the paper kind, as well as create an alternative distribution of keno revenue." The court compared the Video Keno Initiative with Initiatives 417, 419, and 420 considered by the voters in 2004, and concluded that the Video Keno Initiative and the prior initiatives were "not the same as a matter of law." The court rejected Stewart's argument that the resubmission clause applied to "any measure relating to the same general topic as the earlier measure" and that the Video Keno Initiative and the earlier initiatives related to the general topic of expanded gambling. The court instead applied what it described as a " 'substantially the same' " test or a " 'same essential substance' " test. The court noted that Initiative 420 "was intended to expand casino gambling and other forms of gambling, which are currently illegal, throughout the state," while the Video Keno Initiative did not "purport to increase the number of keno lotteries or the location in which keno lotteries are planned" but instead aimed to "permit the electronic version of the game to be

played, while the current statute allows only paper ticket forms of the game to be played." The court concluded that under either a "substantially the same" test or a "same essential substance" test, the Video Keno Initiative did not violate the resubmission clause. The court therefore granted summary judgment in favor of the Sponsors and Gale with respect to Stewart's first theory of recovery, and, Stewart's other theories of recovery having been dismissed, the court dismissed Stewart's action. Stewart appeals.

## ASSIGNMENTS OF ERROR

Stewart claims, restated and consolidated, that the district court erred in concluding that the Video Keno Initiative did not violate the resubmission clause and in concluding that Stewart's challenge regarding article III, § 24, was not ripe for review.

## STANDARDS OF REVIEW

■ A jurisdictional question which does not involve a factual dispute is a matter of law. *State ex rel. Lemon v. Gale, ante* p. 295, 721 N.W.2d 347 (2006). Constitutional interpretation is a question of law. *Id.* On questions of law, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision by the trial court. *Id.*

## ANALYSIS

*Video Keno Initiative Does Not Violate Resubmission Clause.*

Stewart first asserts that the district court erred in determining that the resubmission clause did not preclude the Video Keno Initiative from being placed on the ballot for the November 2006 general election. We conclude that the court did not err in this determination.

■ We initially note that the parties agree and we conclude that the resubmission issue presented in this case is justiciable prior to the election. We recently reasoned in *State ex rel. Lemon, supra,* that in connection with a resubmission challenge, the question is not whether the initiative measure, if adopted, would violate one or more substantive provisions of the state or federal Constitution, but, rather, whether the initiative measure complies with the requirement of article III, § 2, that it not be the same "either in form or in essential substance" as another measure submitted to the voters within a preceding 3-year period.

The resubmission clause presents a question whether the initiative measure is legally sufficient to be submitted to the voters, and the Secretary of State's determination of such question is subject to judicial review. *Id.*

The resubmission clause provides that "[t]he same measure, either in form or in essential substance, shall not be submitted to the people by initiative petition, either affirmatively or negatively, more often than once in three years." Neb. Const. art. III, § 2. In *State ex rel. Lemon, supra,* we rejected arguments that the resubmission clause imposed a narrow restriction preventing only the same initiative measure from being resubmitted using synonyms or mere rewording of language. In *State ex rel. Lemon,* we also rejected the district court's interpretation of the phrase " 'same . . . in essential substance' " to mean " 'substantially the same.' " *Ante* at 305, 721 N.W.2d at 356. Instead, we interpreted the phrase "essential substance" in the resubmission clause to require a broader, conceptual analysis and comparison of the fundamental theme and purpose of each initiative measure to determine if they are the "same" for purposes of the resubmission clause. *Id.*

The parties in this case do not argue that the Video Keno Initiative measure is the same in form as the 2004 measures. Instead, we must determine whether the Video Keno Initiative is the "same . . . in essential substance" as the initiative measures which appeared on the ballot in 2004. Although in his complaint, Stewart asserted that the Video Keno Initiative was the same measure as Initiatives 417, 419, and 420, on appeal, Stewart focuses his arguments on Initiatives 417 and 420. Stewart argues that the Video Keno Initiative and Initiatives 417 and 420 all had the same broad purpose of expanding gambling in Nebraska. Stewart argues in particular that video keno was among the "games of chance" that could have been authorized under the constitutional amendment proposed in Initiative 417 and that would have been authorized by the statutory amendment proposed in Initiative 420, had those two initiatives been adopted. The Sponsors and Gale argue that in contrast to the 2004 initiative measures which sought to authorize a variety of new "games of chance," the Video Keno Initiative seeks to authorize an alternative method of playing keno, which is a form of

"lottery" already authorized under the Nebraska City and County Lottery Act, §§ 9-601 to 9-653.

In Gale's July 12, 2006, memorandum concluding that the Video Keno Initiative did not violate the resubmission clause, he noted that the Video Keno Initiative "seeks to amend current statutory provisions contained in the Nebraska City and County Lottery Act, by allowing the use of 'video keno' devices." Gale further noted that "the proposed statutory change does not mandate new dedicated gaming sites or create a new board or commission to regulate the proposed devices as proposed in Initiative Measure 420 of 2004." Gale further found nothing in Initiative 417 that bore "any similarity to provisions contained in the current Video Keno measure."

The district court, in granting summary judgment in favor of the Sponsors and Gale, concluded that the Video Keno Initiative did not violate the resubmission clause. The court stated as follows:

> Initiative 420 was intended to expand casino gambling and other forms of gambling, which are currently illegal, throughout the state. The video keno initiative does not purport to increase the number of keno lotteries or the location in which keno lotteries are planned. It does however . . . permit the electronic version of the game to be played, while the current statute allows only paper ticket forms of the game to be played. Therefore, the purpose and effect of the two initiatives demonstrate the two are not "substantially the same."

Although the court used the "substantially the same" test that we rejected in *State ex rel. Lemon v. Gale, ante* p. 295, 721 N.W.2d 347 (2006), we agree with the conclusion that the Video Keno Initiative does not violate the resubmission clause.

Initiative 417 proposed to amend article III, § 24, of the Nebraska Constitution, which provides in paragraph (1) that except as otherwise provided, "the Legislature shall not authorize any game of chance or any lottery or gift enterprise when the consideration for a chance to participate involves the payment of money for the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time." As we noted in *State ex rel. Lemon*, Initiative 417

would have removed a constitutional barrier to the operation of casinos by providing that article III, § 24, would not apply to laws enacted by initiative which authorized the " 'operation, regulation, and taxation of all forms of games of chance.' " *Ante* at 307, 721 N.W.2d at 358. We further noted in *State ex rel. Lemon* that the consequence of the constitutional amendment proposed by Initiative 417 was apparent from Initiative 420 which would have enacted a statute by initiative providing for the operation of games of chance at various locations, including casinos located in a city of the metropolitan class. In *State ex rel. Lemon,* we determined that the essential substance of Initiative 417 submitted to the electorate in 2004 was "amending the constitution to authorize enactments permitting the operation of games of chance." *Ante* at 308, 721 N.W.2d at 358.

Initiative 420 proposed statutory amendments that under the authority of the constitutional amendment proposed in Initiative 417, would have authorized games of chance at casinos in metropolitan class cities within 2 miles of the Nebraska border; authorized the use of electronic, mechanical, or other gaming devices at "strategic premises" where at least 250 such devices were operated, as well as at racetracks; and authorized the use of "[l]imited gaming devices" at casinos, "strategic premises," racetracks, and establishments selling alcoholic liquor for consumption on the premises. The statutory amendments proposed by Initiative 420 would also have established the numbers of such casinos and gaming devices to be operated at various locations and would have created a commission to regulate gaming. The fundamental theme and purpose of Initiative 420 was the enactment of a statute authorizing the operation of "games of chance" at casinos and other locations.

By contrast, the fundamental theme and purpose of the Video Keno Initiative is to amend the definition of "lottery" under the Nebraska City and County Lottery Act to include video keno and to provide for the distribution of proceeds and the taxation of revenues from video keno. The Video Keno Initiative does not propose to expand the types of sites at which keno is played or the types of entities that may operate keno lotteries. The Video Keno Initiative therefore has a fundamental theme different from that of Initiative 417 which proposed a constitutional

amendment to authorize enactments by initiative permitting the operation of a variety of "games of chance" and from that of Initiative 420 which proposed a statutory amendment to authorize the operation of such "games of chance" at various new and existing locations.

In deciding the resubmission issue, it is important to note that a distinction is made in article III, § 24, between a "game of chance" and a "lottery." In paragraph (1) of article III, § 24, "game of chance" and "lottery" are referred to as distinct activities that are generally prohibited. However, paragraphs (2) and (3) provide that a "lottery" may be authorized under certain conditions and with certain requirements. Lotteries have been authorized by the Legislature pursuant to certain statutes, including the Nebraska City and County Lottery Act. Keno in its traditional paper form has been authorized as a form of "lottery" under the Nebraska City and County Lottery Act. See § 9-607(1)(c)(ii). Whereas Initiative 417 proposed a constitutional amendment to permit the authorization of enactments by initiative permitting "games of chance" and Initiative 420 proposed a statutory amendment to authorize certain "games of chance," the Video Keno Initiative proposes to amend the statutory term "lottery" to authorize an additional method of playing keno. The Video Keno Initiative therefore has a fundamental theme of amending the types of legally authorized "lotteries," whereas the 2004 initiatives had a fundamental theme of expanding the types of constitutionally authorized "games of chance."

In connection with the resubmission analysis, Stewart argues that video keno is in reality a type of "game of chance" that would have been permitted under the constitutional and statutory amendments proposed by Initiatives 417 and 420. For completeness, we note that Stewart makes a similar argument, which we do not resolve, with respect to his assertion that the Video Keno Initiative violates article III, § 24, because it impermissibly authorizes a form of "lottery" that is actually a prohibited "game of chance." For purposes of determining whether the Video Keno Initiative violates the resubmission clause, we consider only what the Video Keno Initiative purports to achieve in comparison to what the 2004 initiatives proposed to achieve. In making this comparison for purposes of our resubmission analysis, we need

not determine whether the Video Keno Initiative can constitutionally achieve what it proposes to do.

Having determined that the fundamental theme and purpose of the Video Keno Initiative is not the same as the fundamental theme and purpose of Initiatives 417 and 420, we conclude that the Video Keno Initiative does not violate the resubmission clause. The district court reached the same conclusion and did not err in granting summary judgment in favor of the Sponsors and Gale on the resubmission issue. The order on summary judgment is affirmed.

*The Substantive Constitutional Challenge to the Video Keno Initiative Is Not a Preelection Justiciable Issue.*

Stewart next asserts that the district court erred in determining that Stewart's challenge with respect to article III, § 24, was not ripe for review and in therefore granting the Sponsor's motion to dismiss the theory of recovery as to that issue. Because we conclude that Stewart's challenge is a substantive constitutional challenge and is not a preelection justiciable issue, we affirm the district court's order dismissing this theory of recovery.

■ In the absence of an actual case or controversy requiring judicial resolution, it is not the function of the courts to render a judgment that is merely advisory. *State ex rel. Lemon v. Gale, ante* p. 295, 721 N.W.2d 347 (2006); *Wilcox v. City of McCook,* 262 Neb. 696, 634 N.W.2d 486 (2001); *Keller v. Tavarone,* 262 Neb. 2, 628 N.W.2d 222 (2001). At this time, the statutory amendments proposed under the Video Keno Initiative have not been and, indeed, may not be approved by the voters. We must therefore initially decide whether we can reach Stewart's challenge based on article III, § 24, prior to the election at which voters will be asked to consider the Video Keno Initiative.

As we recently noted in *State ex rel. Lemon, supra,* this court held in *Duggan v. Beermann,* 249 Neb. 411, 544 N.W.2d 68 (1996), that the district court was correct in *Duggan* in declining to rule on the constitutionality of an initiative measure prior to the election because "[t]o the degree that appellants sought a declaration that [the initiative measure], if adopted, would enact amendments which violated the U.S. or the Nebraska Constitution, appellants were seeking an advisory opinion." 249

Neb. at 424, 544 N.W.2d at 77. We held in *Duggan* that the question did not become justiciable until the measure was adopted by the voters. Other courts have stated similar reasoning. For example, the Supreme Court of Nevada recently observed that "Preelection challenges to an initiative's substantive constitutionality are not ripe. [A]ny harm is highly speculative since the measure may not even pass at election time." *Herbst Gaming, Inc. v. Sec'y of State*, 122 Nev. 877, 887-88, 141 P.3d 1224, 1231 (2006). See, similarly, *Purcell v. Gonzalez*, 549 U.S. 1, 127 S. Ct. 5, 166 L. Ed. 2d 1 (2006) (Stevens, J., concurring) (counseling against speculation in case involving constitutional challenge to existing election law).

In contrast to the substantive constitutional challenge which was not ripe in *Duggan*, we have had occasion to consider challenges which bear on the regulation of the initiative process itself and we have found these latter challenges justiciable prior to an election. Recently, we found that the resubmission issue in *State ex rel. Lemon* involved requirements for placing a measure on the ballot and, as such, was logically justiciable prior to the election. See § 32-1409(3). Similarly, in *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003), this court held that an issue regarding whether an initiative petition was defective because it failed to include a sworn statement listing the names and addresses of its sponsors, as required by § 32-1405(1), was justiciable prior to the election. We held that § 32-1412(2) permitted a court to hear and decide a challenge to the legal sufficiency of an initiative petition prior to an election. We stated that "[q]uestions dealing with statutory provisions concerning the form of a petition and the technical requirements of the sponsors affect the legal sufficiency of an initiative." *Loontjer*, 266 Neb. at 908-09, 670 N.W.2d at 307. Furthermore, in two separate concurrences to *Loontjer*, three justices of this court indicated that the issue whether an initiative violated the single subject rule of article III, § 2, was a justiciable issue prior to the election. The separate concurrence of two justices in *Loontjer* distinguished the holding with respect to preelection justiciability in *Duggan, supra*. The concurrence noted that *Duggan* involved an attempt "to litigate the substantive constitutionality of the measure before it was adopted," whereas the single subject rule contained in article III,

§ 2, was a "procedural requirement" affecting the legal suffi-
ciency of the measure which would be justiciable prior to the
election. *Loontjer*, 266 Neb. at 920, 925, 670 N.W.2d at 314, 317
(Wright, J., concurring; Gerrard, J., joins).

■ We have thus made a distinction between substantive con-
stitutional challenges to an initiative which do not become justi-
ciable until the proposal is approved by voters and procedural
challenges to the legal sufficiency of an initiative petition which
may be determined prior to an election. Other courts have also
carefully distinguished between procedural and substantive con-
stitutional challenges. In this regard, the Alaska Supreme Court
has stated that "[o]ne type of challenge invokes 'the particular
constitutional and statutory provisions regulating initiatives'"
while "[o]ther challenges are grounded in 'general contentions
that the provisions of an initiative are unconstitutional.'" *Alaska
Action v. Municipality of Anchorage*, 84 P.3d 989, 992 (Alaska
2004). The Alaska Supreme Court stated that courts may review
the first type of challenge "right away," while "the court should
not decide [the second] type of challenge until the initiative has
been enacted by the voters." *Id.* See, also, *Coppernoll v. Reed*,
155 Wash. 2d 290, 119 P.3d 318 (2005). We agree with this
observation of the Alaska Supreme Court.

Procedural challenges generally involve issues of compliance
with the requirements that govern the process by which initia-
tives are submitted to the electorate. Procedural challenges to
the legal sufficiency of initiative petitions are authorized by
§ 32-1412, and such challenges may involve violations of either
statutory or constitutional requirements relating to the initia-
tive process. See, *State ex rel. Lemon v. Gale, ante* p. 295, 721
N.W.2d 347 (2006) (violation of resubmission rule of Neb.
Const. art. III, § 2); *Loontjer v. Robinson*, 266 Neb. 902, 670
N.W.2d 301 (2003) (violation of sworn statement requirement
of § 32-1405(1)).

We have stated that the power of initiative must be liberally
construed to promote the democratic process. *State ex rel.
Lemon, supra*; *Loontjer, supra*. Further, the right of initiative is
precious to the people and is one which the courts are zealous to
preserve to the fullest tenable measure of spirit as well as letter.
*State ex rel. Lemon, supra*; *State ex rel. Stenberg v. Moore*, 258

Neb. 199, 602 N.W.2d 465 (1999). Finally, the provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *State ex rel. Lemon, supra*; *Loontjer, supra.* With these admonitions in mind, and given the statutory directive in § 32-1412 which anticipates involvement of the courts, it necessarily follows that procedural challenges involving initiative petitions will be resolved by the courts. Thus, issues involving protection and regulation of the initiative process are appropriate for preelection resolution so that the voters are presented with an initiative which does not suffer from a procedural or technical infirmity.

In contrast to procedural challenges to the legal sufficiency of initiative petitions which are authorized by statute, there is no statutory authorization for courts to issue preelection advisory opinions regarding the substantive constitutionality of proposed initiatives, and it would not ordinarily be prudent to issue such opinions. As an initial matter, we note that a challenged initiative may not be adopted by the voters and thus an opinion would become unnecessary. Further, we have stated that the Legislature and the electorate are concurrently equal in rank as sources of legislation. *State ex rel. Lemon, supra*; *Loontjer, supra.* Because the Legislature and the electorate are concurrently equal in rank as sources of legislation, and because a court would not be expected to render an advisory opinion regarding the substantive constitutionality of legislation pending in the Legislature prior to its enactment, a court should similarly avoid passing on the substantive constitutionality of a proposed initiative unless and until the measure is approved by the voters. In this regard, we note that the Arizona Supreme Court has stated: "The separation of powers doctrine dictates our deference to legislative functions. 'The legislative power of the people is as great as that of the legislature.' . . . Voter initiatives, part and parcel of the legislative process, receive the same judicial deference as proposals before the state legislature . . . ." (Citations omitted.) *Winkle v. City of Tucson*, 190 Ariz. 413, 415, 949 P.2d 502, 504 (1997).

Article III, § 2, of the Nebraska Constitution provides in part: "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted independently of the Legislature." The legislative power of the

people must be effectual. *State ex rel. Lemon, supra*; *Loontjer, supra*. Preelection judicial review of substantive challenges to initiatives tends to lessen the effectiveness of the constitutional initiative power "reserved by the people," Neb. Const. art. III, § 2, and, regardless of the merits of the proposed initiative, inappropriately injects the courts into political debates. In *Coppernoll v. Reed*, 155 Wash. 2d 290, 304, 119 P.3d 318, 325 (2005), the Washington Supreme Court observed:

> Not only would [preelection judicial review of substantive constitutional challenges] infringe upon the constitutional rights of the people, but it would needlessly inject our courts into a political dispute that is time sensitive. . . . We do not substantively review the legislature's bills before enactment, and will not do so with the people's right of direct legislation.

Perhaps anticipating the barrier to preelection review of Stewart's substantive constitutional challenge to the Video Keno Initiative, he alleges that the Video Keno Initiative is "legally insufficient" because the proposed statutory amendments would violate the "prohibition on gambling" in article III, § 24. He argues that the change sought to be effected by the Video Keno Initiative would require the passage of a constitutional amendment. Stewart thus attempts to characterize his article III, § 24, challenge as a procedural challenge by arguing that an initiative is "legally insufficient" if it attempts to achieve by statutory amendment that which can only be achieved by constitutional amendment. While it may be true that a statutory amendment cannot effect change that requires a constitutional amendment, Stewart's challenge is nevertheless in essence a challenge to the substantive constitutionality of the Video Keno Initiative. Before one could conclude that the proposed statutory change could not be effected without a constitutional amendment, it would need to be established that the proposed statutory change is not consistent with substantive provisions of the constitution. Such an intricate and complex challenge is in reality a substantive constitutional challenge to the initiative rather than a procedural challenge to the legal sufficiency of the initiative. This substantive constitutional challenge in the guise of a procedural challenge is not suitable for preelection review. See *Herbst Gaming,*

*Inc. v. Sec'y of State,* 122 Nev. 877, 884, 141 P.3d 1224, 1229 (2006) (stating that "if substantive constitutional challenges were allowed in the guise of procedural . . . challenges, it would open the floodgates to almost any kind of preelection challenge"). See, also, *Coppernoll, supra.*

We determine that Stewart's challenge to the Video Keno Initiative as violative of article III, § 24, is a substantive constitutional challenge that is not justiciable unless and until the voters approve the Video Keno Initiative. We therefore conclude that the district court did not err in determining that the issue was not ripe for review and in granting the Sponsors' motion to dismiss the theory of recovery raising the article III, § 24, issue. This order is affirmed.

## CONCLUSION

Stewart brought this action against the Sponsors and Gale to remove the Video Keno Initiative from appearing on the ballot for the November 7, 2006, general election. The district court dismissed the action, thus permitting the Video Keno Initiative to remain on the ballot. Stewart appeals to this court, claiming that the dismissal and the reasoning on which it was based were in error. Specifically, Stewart challenges the district court's orders which determined that the Video Keno Initiative did not violate the resubmission clause in article III, § 2, of the Nebraska Constitution and which further determined that Stewart's substantive challenge to the Video Keno Initiative was not justiciable prior to the November election.

We conclude that the resubmission issue relates to the regulation of the initiative process itself and, being of a procedural nature, is justiciable prior to the election. Because the Video Keno Initiative is not the same in essential substance as certain initiatives submitted in 2004, we conclude that the resubmission clause does not bar the Video Keno Initiative from being placed on the ballot for the November 7, 2006, general election. We further conclude that the intricate and complex issue raised regarding the potential constitutional problem of the Video Keno Initiative under the games of chance and lottery provisions in article III, § 24, is a substantive constitutional challenge, does not relate to the initiative process itself, and is not suitable for

preelection review. This is so largely because the legislative power reserved to the people in article III, § 2, of the Nebraska Constitution is similar to that of the Legislature and, regardless of the merits of proposed voter initiatives, such initiatives receive the same judicial deference as proposals before the state Legislature.

The district court did not err in determining that the Video Keno Initiative was not barred by the resubmission clause and in further determining that the merits of the challenge under article III, § 24, were not ripe for judicial review. Having rejected Stewart's assignments of error, we affirm the district court's dismissal of the action.

AFFIRMED.

HEAVICAN, C.J., not participating.