Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:12 AM CST

Mark R. Christensen and Lydia Brasch, appellants,
v. John Gale, Secretary of State of the
State of Nebraska, et al., appellees.
___ N.W.2d ___

Filed September 12, 2018.    No. S-18-825.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.
3. **Judgments: Jurisdiction.** A jurisdictional question that does not involve a factual dispute is a matter of law.
4. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.
5. **Constitutional Law: Initiative and Referendum.** The power of initiative in article III, § 1, of the Nebraska Constitution is "[t]he first power reserved by the people" under article III, § 2.
6. ____: ____. The right of initiative is precious to the people and one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.
7. **Initiative and Referendum: Statutes.** Statutory provisions authorizing initiative petitions should be construed in such a manner that the legislative power reserved in the people is effectual and should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to its exercise.

8. **Initiative and Referendum.** The sworn statement provision of Neb. Rev. Stat. § 32-1405(1) (Reissue 2016) is mandatory.

9. **Initiative and Referendum: Statutes: Words and Phrases.** "Sponsoring the petition" in the context of Neb. Rev. Stat. § 32-1405(1) (Reissue 2016) means assuming responsibility for the initiative or referendum petition process.

10. **Initiative and Referendum: Words and Phrases.** Defining sponsors as those who assume responsibility for the petition process serves the dual purposes of informing the public of (1) who may be held responsible for the petition, exposing themselves to potential criminal charges if information is falsified, and (2) who stands ready to accept responsibility to facilitate the referendum's inclusion on the ballot and defend the referendum process if challenged.

11. **Initiative and Referendum: Statutes.** The statutory scheme governing initiative and referendum petitions requires filings with the Secretary of State identifying the persons or entities taking legal responsibility for the petition process, while the Nebraska Political Accountability and Disclosure Act focuses on identifying those persons or entities financially supporting the petition process.

12. ____: ____. Limiting the category of "sponsors" for purposes of Neb. Rev. Stat. § 32-1405 (Reissue 2016) to those persons or entities who have specifically agreed to be responsible for the petition process and serve in the capacities the statutes require of sponsors, lends clarity and simplicity to the petition process, thereby facilitating and preserving its exercise.

13. ____: ____. A non-named person or entity's motivation to decline to be a named sponsor is irrelevant to the question of who must be listed pursuant to Neb. Rev. Stat. § 32-1405(1) (Reissue 2016).

14. **Constitutional Law: Initiative and Referendum: Intent.** The controlling consideration in determining the singleness of a proposed amendment is its singleness of purpose and the relationship of the details to the general subject.

15. ____: ____: ____. The controlling consideration in determining the singleness of a subject for purposes of article III, § 2, of the Nebraska Constitution is its singleness of purpose and relationship of the details to the general subject, not the strict necessity of any given detail to carry out the general subject.

16. **Initiative and Referendum: Statutes: Intent.** Whether the elements of complex statutory amendments can be characterized as presenting different policy issues, the crux of the question is the extent of the differences and how the elements relate to the primary purpose.

17. **Courts: Justiciable Issues.** Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy.

18. **Courts.** The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated.

19. **Initiative and Referendum: Justiciable Issues.** Unlike challenges to the form of a ballot measure or the procedural requirements to its placement on the ballot, which are challenges to whether the measure is legally sufficient to be submitted to the voters, substantive challenges to proposed initiatives are not justiciable before the measures are adopted by voters.

20. **Judges: Evidence: Appeal and Error.** The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.

21. **Judges: Words and Phrases.** An abuse of discretion in a ruling on the admissibility of evidence occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

J.L. Spray and Ryan K. McIntosh, of Mattson Ricketts Law Firm, for appellants.

Douglas J. Peterson, Attorney General, and Ryan S. Post for appellee John Gale.

Andre R. Barry and Shawn D. Renner, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees Insure the Good Life, Sarah Amanda Gershon, Kathy Campbell, and Rowen Zetterman.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, and FREUDENBERG, JJ.

FREUDENBERG, J.

## NATURE OF CASE

This case presents a challenge to an initiative petition seeking to expand Medicaid coverage. The district court granted summary judgment in favor of the defendant sponsors and the Secretary of State. The court concluded that the measure did not violate the single subject rule, because the maximization of federal funding for the expanding of Medicaid eligibility had a natural and necessary connection to the expansion. The court also concluded that the list of sponsors was not incomplete under Neb. Rev. Stat. § 32-1405(1) (Reissue 2016). One of the sponsors, "Insure the Good Life," was both a political committee and a service mark. While the controlling members of the committee were named sponsors, the nonprofit organization holding the service mark was not. The court reasoned that because the nonprofit organization did not assume responsibility for the initiative process, it was not a sponsor. The court found that further challenges to the proposed measure as being an unconstitutional delegation of legislative authority and an improper appropriation were not ripe for review. We affirm.

## BACKGROUND

An initiative petition to expand coverage in the Medical Assistance Act[1] was filed with Secretary of State John Gale. The petition proposed the addition of "Section 2" to that act, with five subsections and the general object to "expand eligibility to cover certain adults ages 19 through 64 whose incomes are one-hundred-thirty-eight percent (138%) of the federal poverty level or below . . . and to maximize federal financial participation to fund their care."

Specifically, the subsections of proposed section 2 would: (1) expand Medicaid to adults ages 19 through 64 whose income

---

[1] Neb. Rev. Stat. §§ 68-901 to 68-991 (Reissue 2009, Cum. Supp. 2016 & Supp. 2017).

is equal to or less than 138 percent of the federal poverty level, (2) direct the Department of Health and Human Services (DHHS) to submit a state plan amendment and all other necessary documents seeking required approvals or waivers to the federal centers for Medicare and Medicaid services, (3) direct DHHS to take all actions necessary to maximize federal financial participation in funding medical assistance pursuant to section 2, (4) require that no greater burdens or restrictions may be imposed on persons eligible for medical assistance under section 2 than any other population eligible for medical assistance, and (5) require that section 2 shall apply notwithstanding any other provision of law or federal waiver.

The sworn statement filed with the Secretary of State listed four sponsors of the petition: Sarah Amanda Gershon, Kathy Campbell, Dr. Rowen Zetterman, and Insure the Good Life (the named sponsors). Insure the Good Life is both a ballot question committee and a service mark registered by Nebraska Appleseed Center for Law in the Public Interest (Appleseed).

Mark R. Christensen, a former member of the Nebraska Legislature and a parent of a child who received Medicaid benefits, and Lydia Brasch, a current member of the Nebraska Legislature, brought an action for declaratory judgment under Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016) and injunctive relief pursuant to Neb. Rev. Stat. § 32-1412(2) (Reissue 2016) against the named sponsors of the petition and Gale in his capacity as Secretary of State. They alleged that (1) the initiative violated the single subject rule of article III, § 2, of the Nebraska Constitution; (2) the initiative failed to contain a sworn statement containing the names and addresses of every person, corporation, or association sponsoring the petition, as required by § 32-1405(1); (3) the proposed amendment constituted an unconstitutional delegation of legislative authority[2]; and (4) the proposed amendment failed to meet the

---

[2] See Neb. Const. art. II, § 1.

criteria set forth in Neb. Rev. Stat. § 49-804 (Reissue 2010), for appropriations.

Specifically, Christensen and Brasch alleged that the initiative violated the single subject rule, because the expansion of Medicaid eligibility and the maximization of federal financial participation in funding Medicaid are two separate and distinct subjects. They alleged that the initiative violated the mandate of § 32-1405(1), that it list every person, corporation, or association sponsoring the petition, because it failed to include Appleseed. They alleged that the proposed amendment unconstitutionally delegated legislative power by directing DHHS to develop a plan for implementation of the amendment without sufficient statutory guidance or limitations. And they alleged that the proposed amendment was an appropriation, because it "requires DHHS to expand medical assistance to thousands of additional individuals at a cost of millions of dollars," and such appropriation did not satisfy the criteria of § 49-804.

The Secretary of State and the named sponsors moved to dismiss the complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6), for failure to state a claim and lack of jurisdiction. Christensen and Brasch moved for a "Judgment on the Complaint" or, alternatively, for summary judgment.

At the hearing on the motions, the Secretary of State offered, and the court received, exhibits 1 and 2. Exhibit 1 is a copy of the petition sponsor's sworn statement, the object statement, the proposed text of the statutory initiative petition, and the sample initiative petition form. Exhibit 2 is a certification by the Secretary of State that Insure the Good Life was registered as a service mark by Appleseed on September 28, 2015, with the stated purpose of being used on materials distributed to support expansion of Medicaid in the sale or advertising of services. These exhibits were also attached to the complaint. The parties agreed that the receipt of these exhibits, alone, did not convert the motions to dismiss into motions for summary judgment. But both parties offered further exhibits.

Christensen and Brasch offered exhibits 3 and 4. Exhibit 3 was a certified copy of proposed 2017 Neb. Laws, L.B. 441, with attached fiscal analyst notes from the 105th Legislature, First Session. The court sustained the sponsors' and the Secretary of State's relevancy objections, as L.B. 441 was a bill that did not pass. The bill sought to expand Medicaid, and the attached fiscal analyst notes estimated the increased state expenditures that would result.

Exhibit 4 is an exhibit by Christensen and Brasch's attorney, averring that he had personally observed Appleseed's social media accounts displaying the Insure the Good Life logo. Several posts were attached. The Secretary of State objected on relevancy. The sponsors objected on relevancy and hearsay grounds. For purposes of the motion to dismiss, the sponsors also objected that it was evidence outside the pleadings. Christensen and Brasch renewed the offer of exhibit 4 with the understanding that the motions to dismiss would be considered motions for summary judgment. The court received exhibit 4 into evidence.

The sponsors then offered exhibits 5 through 8 for purposes of summary judgment. The exhibits contain records of the Nebraska Accountability and Disclosure Commission.

Exhibit 5 is a statement of organization of a political committee, stating that Insure the Good Life is such a committee. The statement of organization lists Noelle Obermeyer as the treasurer of the committee and names Gershon, Campbell, and Zetterman as the controlling individuals of the committee.

Exhibits 6 through 8 are Insure the Good Life's campaign statements filed with the commission. Christensen and Brasch objected to exhibit 5 on relevancy and foundation grounds and to exhibits 6 through 8 on relevancy. Exhibit 7 shows that Insure the Good Life disclosed to the commission contributions by Appleseed. The court overruled the objections and entered exhibits 5 through 8 into evidence.

Treating the motions to dismiss as motions for summary judgment without any objection by the parties, the court

ultimately entered summary judgment for the named sponsors and the Secretary of State. The court concluded that the initiative did not violate the single subject rule because the maximization of federal financial participation in the Medicaid expansion had a natural and necessary connection to the expansion. The court reasoned that even viewing the evidence in a light most favorable to Christensen and Brasch and concluding that Appleseed supported the initiative through a public relations campaign and posts on social media accounts, such facts would not make Appleseed a sponsor of the petition under § 32-1405(1), because Appleseed did not assume responsibility for the initiative process. The court found that the remaining separation of powers and appropriations claims were not yet ripe for review. Christensen and Brasch appeal.

## ASSIGNMENTS OF ERROR

Christensen and Brasch assign, summarized and restated, that the district court erred by (1) dismissing as unripe and failing to find merit to its claims that the ballot measure was an unconstitutional delegation of legislative authority and did not meet the criteria set forth in § 49-804 for appropriations, (2) failing to determine that the initiative petition was constitutionally deficient because it contained more than one subject, (3) failing to determine that the initiative petition was constitutionally deficient because it did not list Appleseed as a sponsor, and (4) excluding exhibit 3 from the evidence.

## STANDARD OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[3]

---

[3] *City of Fremont v. Kotas*, 279 Neb. 720, 781 N.W.2d 456 (2010*)*, *abrogated on other grounds, City of North Platte v. Tilgner*, 282 Neb. 328, 803 N.W.2d 469 (2011).

[2] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[4]

[3] A jurisdictional question that does not involve a factual dispute is a matter of law.[5]

[4] The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.[6]

## ANALYSIS

[5-7] Raising issues of statutory and constitutional interpretation, Christensen and Brasch seek to invalidate an initiative petition that received enough signatures to be placed on the November 2018 ballot. The power of initiative in article III, § 1, of the Nebraska Constitution is "[t]he first power reserved by the people."[7] The right of initiative is precious to the people and one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.[8] Statutory provisions authorizing initiative petitions should be construed in such a manner that the legislative power reserved in the people is effectual and should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to its exercise.[9]

### SPONSORS

[8,9] Christensen and Brasch first contend that the initiative is invalid because Appleseed was a "sponsor" of the initiative

---

[4] *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[5] *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003).

[6] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[7] Neb. Const. art. III, § 2.

[8] See *Hargesheimer v. Gale, supra* note 4.

[9] See *id.*

and was not listed in the sworn statement as required by § 32-1405(1). Section 32-1405(1) provides:

> Prior to obtaining any signatures on an initiative or referendum petition, a statement of the object of the petition and the text of the measure shall be filed with the Secretary of State together with a sworn statement containing the names and street addresses of every person, corporation, or association sponsoring the petition.

The sworn statement provision of § 32-1405(1) is mandatory.[10] Section 32-1405(1) and related statutes do not provide definitions for the word "sponsor" or the phrase "sponsoring the petition." But we held in *Hargesheimer v. Gale*[11] that sponsoring the petition means assuming responsibility for the initiative or referendum petition process.

[10] In *Hargesheimer*, we explained that defining sponsors as those who assume responsibility for the petition process serves the dual purposes of informing the public of (1) who may be held responsible for the petition, exposing themselves to potential criminal charges if information is falsified,[12] and (2) who stands ready to accept responsibility to facilitate the referendum's inclusion on the ballot and defend the referendum process if challenged.[13] The initiative petition statutes impose several responsibilities upon named sponsors once the initiative process has commenced, and we indicated that the primary purpose of the "sworn statement containing the names and street addresses of every person, corporation, or association sponsoring the petition" in § 32-1405(1) is to identify those individuals agreeing to accept such responsibilities.[14]

---

[10] *Loontjer v. Robinson, supra* note 5.

[11] *Hargesheimer v. Gale, supra* note 4.

[12] See Neb. Rev. Stat. § 32-1502 (Reissue 2016).

[13] *Hargesheimer v. Gale, supra* note 4.

[14] See *Loontjer v. Robinson, supra* note 5 (Hendry, C.J., concurring in result; Gerrard, J., joins). See, also, e.g., §§ 32-1405(2) and 32-1412(2) and Neb. Rev. Stat. § 32-1409(3) (Reissue 2010).

We specifically rejected the argument that sponsors must include all financial contributors to the petition, so that the public has notice of who such persons are. We explained that not only did amendments to § 32-1405(1) remove language including as sponsors all individuals or entities ""'"contributing or pledging contribution of money or other things of value,"'"'[15] the public has access to the identity of all financial contributors through reports filed with the Nebraska Accountability and Disclosure Commission.[16]

[11] We summarized that the statutory scheme governing initiative and referendum petitions[17] requires filings with the Secretary of State identifying the persons or entities taking legal responsibility for the petition process, while the Nebraska Political Accountability and Disclosure Act[18] focuses on identifying those persons or entities financially supporting the petition process.[19]

[12] We also explained that limiting the category of "sponsors" for purposes of § 32-1405 to "those persons or entities who have specifically agreed to be responsible for the petition process and serve in the capacities the statutes require of sponsors," lent clarity and simplicity to the petition process, thereby facilitating and preserving its exercise.[20] To interpret the term more broadly would make "compliance with the statute more precarious" by "inject[ing] ambiguity" and "expos[ing] the petition process to procedural challenges and the risk of defects unrelated to the substance of the petition."[21]

---

[15] *Hargesheimer v. Gale, supra* note 4, 294 Neb. at 132, 881 N.W.2d at 596-97 (emphasis omitted).

[16] See, generally, Neb. Rev. Stat. §§ 49-1401 to 49-14,141 (Reissue 2010, Cum. Supp. 2016 & Supp. 2017).

[17] Neb. Rev. Stat. §§ 32-1401 to 32-1417 (Reissue 2016).

[18] §§ 49-1401 to 49-14,141.

[19] See *Hargesheimer v. Gale, supra* note 4.

[20] *Id.* at 134-35, 881 N.W.2d at 598.

[21] *Id.* at 134, 881 N.W.2d at 598.

Christensen and Brasch attempt to distinguish this case from *Hargesheimer* by focusing on the novel fact that Insure the Good Life was a service mark registered by Appleseed. They do not address the fact that Insure the Good Life is also a registered political committee and that all its controlling members were named in the sworn statement as sponsors.

[13] A "[s]ervice mark" is "any word, name, symbol, or device or any combination thereof used by a person, to identify and distinguish the services of one person, including a unique service, from the services of others."[22] To be licensed to use a service mark is to have the right or permission to use it.[23] Christensen and Brasch argue that Appleseed was a sponsor not because of its involvement in financing or promoting the petition, but because it purposefully attempted to deceive voters by participating in the initiative process under a service mark without listing its corporate identity. They argue that because Insure the Good Life was a sponsor, Appleseed must also be a sponsor. Christensen and Brasch's arguments are not meaningfully different than the arguments that were made in *Loontjer v. Robinson*, of hiding behind a "'sham committee.'"[24] In the course of setting forth the definition of sponsor that we later expressly adopted in *Hargesheimer*, Chief Justice Hendry found those arguments unpersuasive. A non-named person or entity's motivation to decline to be a named sponsor is irrelevant to the question of who must be listed pursuant to § 32-1405(1).

We rejected in *Hargesheimer* the concept of analyzing a person or entity's involvement in financing or promoting the petition, because doing so would inject ambiguity, making compliance with the statute more precarious and exposing the

---

[22] Neb. Rev. Stat. § 87-128(8) (Reissue 2014). See, also, Neb. Rev. Stat. §§ 28-618(19) (Reissue 2016) and 87-301(22) (Cum. Supp. 2016).

[23] See Neb. Rev. Stat. § 59-1714.01 (Reissue 2010).

[24] *Loontjer v. Robinson, supra* note 5, 266 Neb. at 916, 670 N.W.2d at 312 (Hendry, C.J., concurring in result; Gerrard, J., joins).

petition process to procedural challenges and the risk of defects unrelated to the substance of the petition.[25] To inject into the sponsorship analysis questions of intent, as Christensen and Brasch suggest we ought, would inject even more ambiguity into the petition process than the test suggested and rejected by this court in *Hargesheimer*. This would unnecessarily undermine the first power reserved by the people.

Again, the sponsor is nothing more than the person or entity identifying himself, herself, or itself as willing to assume statutory responsibilities once the initiative process has commenced. Under the definition adopted in *Hargesheimer*, Insure the Good Life, Gershon, Campbell, and Zetterman are the sponsors, and there are no other persons or entities who are sponsors. The issues raised by Christensen and Brasch concerning the public's need to know who or what entity might be "hiding" their involvement are addressed through the Nebraska Political Accountability and Disclosure Act and Appleseed's disclosure of its contributions to Insure the Good Life, a ballot question committee.

We agree with the district court that the list of sponsors in the sworn statement is complete and does not violate § 32-1405(1).

### Single Subject

Second, Christensen and Brasch challenge the initiative as violating the single subject rule. Article III, § 2, of the Nebraska Constitution provides, among other matters related to initiatives, that "[i]nitiative measures shall contain only one subject." A purpose of this language is to avoid voter confusion and logrolling, which is the practice of combining dissimilar propositions into one proposed amendment so that voters must vote for or against the whole package even though they would have voted differently had the propositions been submitted separately.[26]

---

[25] See *Hargesheimer v. Gale, supra* note 4.

[26] See *State ex rel. Loontjer v. Gale*, 288 Neb. 973, 853 N.W.2d 494 (2014).

[14] We, like the majority of jurisdictions, follow the natural and necessary connection test: "'[W]here the limits of a proposed law, having natural and necessary connection with each other, and, together, are a part of one general subject, the proposal is a single and not a dual proposition.'"[27] The controlling consideration in determining the singleness of a proposed amendment is its singleness of purpose and the relationship of the details to the general subject.[28] The general subject is defined by its primary purpose.[29]

In *State ex rel. Loontjer v. Gale*,[30] we held that a proposed ballot measure violated the separate-vote provision of article XVI, § 1, of the Nebraska Constitution, which imposes the same requirements as the single subject provision under article III, § 2. The proposed ballot measure asked voters to amend the state Constitution, which permitted only live and simulcast horseracing wagers, in order to allow for slot-machine-type gambling on replayed horseraces.[31] Additionally, as to both live and replayed horseracing, the measure proposed directing the tax revenues to property tax relief and education funding, thereby redirecting the live horseracing tax revenue which was at that time going elsewhere.[32] The proposed amendments did not otherwise address live horseracing.

We said that the legalization of a new form of horseracing lacked a natural and necessary connection to the measure's proposal to the use tax revenues for property tax relief and education.[33] We explained:

---

[27] *Id.* at 999, 853 N.W.2d at 513. See, also, *Munch v. Tusa*, 140 Neb. 457, 300 N.W. 385 (1941).

[28] See *State ex rel. Loontjer v. Gale, supra* note 26.

[29] See *id.*

[30] *Id.*

[31] See *id.*

[32] See *id.*

[33] See *id.*

The appropriation proposal's only connection to the wagering proposal was to enhance the odds that voters would approve the new form of wagering. Many voters who might oppose proposals for new forms of wagering, standing alone, might nonetheless want new funding for property tax relief and kindergarten through 12th grade education. But they would be presented with a take-it-or-leave-it proposition. And this type of proposition is at the heart of the prohibition against logrolling. Conversely, even voters who would support the new type of wagering might prefer that the parimutuel tax revenues continue to be credited to the state's general fund, instead of devoted exclusively to property tax relief and education.[34]

In the case before us, we do not view the funding proposal in section two of the proposed initiative language as being *only* to enhance the odds that voters would approve Medicaid expansion. And furthermore, in contrast, in *City of Fremont v. Kotas*,[35] we held that an initiative petition did not violate the single subject rule. Despite several components of the proposed measure dealing with the subjects of occupancy, licensing, electronic verification, government uses, resources, and penalties, and the application to both landlords and employers, we held that these subjects had a natural and necessary connection with each other and were part of the general subject of regulating illegal immigration. The proposed measure was not confusing or deceiving to the voters.[36]

Christensen and Brasch argue that there were two distinct subjects in the initiative: (1) the expansion of Medicaid and (2) whether such expansion would be funded, as much as possible, by the federal government. While they argue for the first time on appeal that the initiative also contained the

---

[34] *Id*. at 1004, 853 N.W.2d at 515.

[35] *City of Fremont v. Kotas, supra* note 3.

[36] See *id.*

separate subject of "delegat[ing] to the executive branch the obligation to amend the State's Medicaid plan adopting, accepting and assenting to all applicable provisions of Title XIX and Title XXI of the federal Social Security Act," they did not raise this contention below.[37] Therefore, we will not address it.[38]

We agree with the district court that the expansion of Medicaid and its funding have a natural and necessary connection with each other and, thus, a singleness of purpose. The general subject is Medicaid expansion, and maximizing federal funding for that expansion is a detail related to the singleness of purpose of expanding Medicaid.

[15] This ballot measure is not like the one in *State ex rel. Loontjer*. It is more akin to *Kotas*, where several subelements related to the single subject of regulating illegal immigration. The single subject test is not, as Christensen and Brasch propose, whether the initiative could theoretically have proposed the expansion of Medicaid without also proposing that federal funding is maximized in order to do so; i.e., whether federal dollars are absolutely "necessary" to effectuate an increase in Medicaid. The controlling consideration in determining the singleness of a subject for purposes of article III, § 2, of the Nebraska Constitution is its singleness of purpose and relationship of the details to the general subject, not the strict necessity of any given detail to carry out the general subject.[39]

[16] Because its parts all relate to the same general subject, the initiative petition does not create voter confusion and logrolling. Christensen and Brasch assert that some voters might be in favor of Medicaid expansion but not in favor of expanding federal funding and that the measure presents "two separate, large substantive police [sic] issues with a single

---

[37] Brief for appellants at 12.

[38] See, e.g., *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

[39] See *State ex rel. Loontjer v. Gale, supra* note 26.

vote.”[40] Whether the elements of complex statutory amendments can be characterized as presenting different policy issues, the crux of the question is the extent of the differences and how the elements relate to the primary purpose.

The voters considering the initiative petition here at issue are unlikely to be confused and persuaded to vote for the primary purpose of expanding Medicaid in order to obtain, more generally, federal funds. The subject of federal funding does not present a level of dissimilarity that creates a risk of confusion and logrolling.

We agree with the district court that the initiative did not violate the single subject rule.

## Ripeness

[17,18] Likewise, we agree with the district court that Christensen and Brasch's remaining two challenges are not ripe for review. Ripeness is a justiciability doctrine that courts consider in determining whether they may properly decide a controversy.[41] The fundamental principle of ripeness is that courts should avoid entangling themselves, through premature adjudication, in abstract disagreements based on contingent future events that may not occur at all or may not occur as anticipated.[42]

[19] Unlike challenges to the form of a ballot measure or the procedural requirements to its placement on the ballot, which are challenges to whether the measure is legally sufficient to be submitted to the voters, substantive challenges to proposed initiatives are not justiciable before the measures are adopted by voters.[43] An opinion on the substantive challenge based on the contingent future event of the measure's passage would be merely advisory. Furthermore, preelection

---

[40] Brief for appellants at 14.

[41] *State ex rel. Loontjer v. Gale, supra* note 26.

[42] *Id.*

[43] See, *id.*; *City of Fremont v. Kotas, supra* note 3.

judicial review of substantive challenges to initiatives tends to lessen the effectiveness of the constitutional initiative power "reserved by the people,"[44] and, regardless of the merits of the proposed initiative, inappropriately injects the courts into political debates.[45]

Christensen and Brasch rely on *State ex rel. Brant v. Beermann*[46] to argue that a challenge to the measure for its substantive defects, at least where those defects touch upon the requirements of article III, § 2, of the Nebraska Constitution, is ripe when patently clear. In *State ex rel. Brant*, we refused to issue a writ of mandamus requiring the Secretary of State to place a measure on the ballot, after the Secretary of State had determined that the measure was a mere statement of position and had no semblance of a law within the initiative provisions of the constitution. But we did not specifically address ripeness, and in *State ex rel. Loontjer*, we expressly recognized that our holding in *State ex rel. Brant* had been abrogated by *Duggan v. Beermann*.[47]

We said in *State ex rel. Loontjer* that we had "assumed [in *State ex rel. Brant*] the Secretary [of State] could reject a proposed ballot measure for its substantive constitutional defects."[48] But in *Duggan*, we had made clear that substantive defects are not ripe for review.[49]

A substantive challenge to a ballot measure is not ripe until the measure is voted into law. Both Christensen and Brasch's challenges to the proposed law as an unconstitutional delegation of legislative authority and as violating the criteria

---

[44] Neb. Const. art. III, § 2.

[45] *Stewart v. Advanced Gaming Tech.*, 272 Neb. 471, 723 N.W.2d 65 (2006).

[46] *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984).

[47] *Duggan v. Beermann*, 249 Neb. 411, 544 N.W.2d 68 (1996). See *State ex rel. Loontjer v. Gale, supra* note 26.

[48] *State ex rel. Loontjer v. Gale, supra* note 26, 288 Neb. at 987, 853 N.W.2d at 505.

[49] See, *id.* (citing *Duggan v. Beermann, supra* note 47).

for appropriations set forth in § 49-804 are substantive challenges to the initiative. These substantive challenges are not ripe for judicial review, and we express no opinion on any of them.

## Exhibit 3

[20,21] Finally, Christensen and Brasch assert that the district court erred in sustaining the Secretary of State and named sponsors' relevancy objection to exhibit 3. The exercise of judicial discretion is implicit in determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion.[50] An abuse of discretion in a ruling on the admissibility of evidence occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[51] Christensen and Brasch assert that exhibit 3 was relevant to demonstrate the extent of the expenditure that the proposed measure would entail. In other words, they assert that exhibit 3 was relevant to their appropriations challenge. Because that challenge was not ripe, the court did not abuse its discretion in determining that exhibit 3 was not relevant.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court, which dismissed Christensen and Brasch's complaint with prejudice.

Affirmed.

Miller-Lerman, J., participating on briefs.
Papik, J., not participating.

---

[50] *State v. Swindle, supra* note 6.

[51] *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007).